IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | | |
| DIAMOND COMIC DISTRIBUTORS, INC., et al.[1] | * | Jointly Administered under Case No: 25-10308-DER (Chapter 11) |
| | * | |
| Debtors | * | |

* * * * * * * * * * * *

| | | |
|---|---|---|
| Morgan W. Fisher, Chapter 7 Trustee, | * | |
| Plaintiff, | | |
| v. | * | Adv. Proc. No: 25-00235-DER |
| American Mythology Productions, LLC d/b/a American Mythology Productions, LLC, | * | |
| Defendant. | * | |

* * * * * *

| | | |
|---|---|---|
| American Mythology Productions, LLC d/b/a American Mythology Productions, LLC, | * | |
| Counterclaimant and Third-Party Plaintiff, | * | |
| v. | * | |
| JPMORGAN CHASE BANK, N.A., and SPARKLE POP, LLC, | * | |
| Third-Party Defendants. | * | |

* * * * * * * * * * * *

**<u>THIRD PARTY PLAINTIFF'S MOTION TO COMPEL DISCOVERY</u>**

Defendant and Third-Party Plaintiff, American Mythology Productions, LLC ("Third-Party Plaintiff") by counsel, and pursuant to Rules 34, 37, and 45 of the Federal Rules of Civil Procedure, files this Motion to Compel Discovery ("Motion") upon Third-Party Defendant Sparkle Pop, LLC ("Sparkle Pop") and states as follows:

[1] The Debtors in these Chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).

1. The Debtors commenced the Bankruptcy Case on January 14, 2025 (the "Petition Date"), by the filing of voluntary petitions under Chapter 11 of Title 11 of the United States Code in the Baltimore Division of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court").

2. On May 1, 2025, an Order was entered by the Bankruptcy Court: (i) Approving Asset Purchase Agreement (the "Purchase Agreement") by and among the Debtors and Sparkle Pop, LLC, a Delaware limited liability company, and the other parties thereto, (ii) Approving Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests; (iii) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (iv) Granting Related Relief (the "Sparkle Pop Sale Order").

3. Pursuant to the Sparkle Pop Sale Order, goods held by Debtors on consignment (i.e., Consigned Inventory) were excluded from the Purchase Agreement.

4. On May 15, 2025, the Debtors and Sparkle Pop closed on the transactions contemplated by the Purchase Agreement and the Sparkle Pop Sale Order.

5. Prior to the Petition Date, and thereafter, the Debtors (and/or Sparkle Pop if after May 15, 2025—i.e., closing of the Purchase Agreement) received Consigned Inventory, which Consigned Inventory is currently stored at the Debtors' former distribution facility in Olive Branch, Mississippi (the "Warehouse").

6. The Third-Party Plaintiff is the owner of certain Consigned Inventory currently stored at the Warehouse.

7. Also following closing of the Purchase Agreement, a dispute arose between the Debtors and a number of consignors (including the Third-Party Defendant) on the one hand, and Sparkle Pop, on the other hand, regarding post-closing sales of the Consigned Inventory by

Sparkle Pop, which dispute was partially resolved on September 12, 2025 by the Bankruptcy Court's Consent Order Resolving, in Part, Debtors' Motion (i) to Enforce the Automatic Stay, (ii) to Enforce the Sale Order, and (iii) Granting Related Relief (the "Consent Order"). Pursuant to the Consent Order, Sparkle Pop deposited funds into the registry of the Bankruptcy Court which represented proceeds from certain sales of the Consigned Inventory that were made after May 15, 2025 through approximately mid-October 2025, for certain Consigned Inventory that was delivered prior to May 15, 2025.

8. Despite this Third-Party Plaintiff does not have an up-to-date or accurate accounting of what of its Consigned Inventory remains in the Warehouse. In reviewing the reporting provided by Sparkle Pop to date, Third-Party Plaintiff notes the following deficiencies with the reporting:

a. Initially, Sparkle Pop reported sales only of inventory *received* after May 15, 2025.

b. Even after Sparkle Pop reported sales of inventory received both before and after May 15, 2025, Sparkle Pop has not updated its court reporting with regard to inventory sales after October 2025.

c. With regard to sales reported to this Court through October 2025, Sparkle Pop apparently applied a flat return rate as to each consignor. See, e.g., Sparkle Pop Report, attached hereto as Exhibit 1, illustrating the application of a flat return rate, and summary from Sparkle Pop, attached hereto as Exhibit 2. Sparkle Pop has never provided any detail as to what products were actually returned. *See*, Affidavit of Sparkle Pop Agent attached as **Exhibit 3.** Furthermore, some of the inventory sold was not returnable, and consignors

have reported that they did not receive returned product (supporting the consignors' allegation that Sparkle has reported returns that never, in fact, occurred).

d. Sparkle Pop also may be continuing to sell inventory from the Warehouse. As recently as early 2026, one of the consignors received a report showing that inventory of another consignor being processed and removed from the Warehouse, despite Sparkle's consensual agreement that any sales are prohibited by the automatic stay. See E-Mail from Drawn and Quarterly Books, Inc. attached as **Exhibit 4**.

9. In short, Third-Party Plaintiff requires an inspection of the Warehouse to audit the product that it owns that is located there, and to corroborate the reports that Sparkle Pop has generated. Additionally, in order to facilitate the removal of its Consigned Inventory from the Warehouse and to determine if there remains a further claim for conversion, Third-Party Plaintiff sought to inspect its property in the Warehouse to determine its condition, statues, and how much of its Consigned Inventory remains there, having not been sold by an unauthorized Sparkle Pop.

10. On July 3, 2026, Third-Party Plaintiff propounded an Amended Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) (**Exhibit 5**, Third-Party Plaintiff's Amended Subpoena for Inspection.)

11. On July 22, 2026, Sparkle Pop served its Responses and Objections to Subpoena to Permit Inspection.

12. Counsel for Third-Party Plaintiff and Sparkle Pop have exchanged numerous phone calls, video calls, and emails in an attempt to resolve this discovery dispute.

13. A party can move for an order compelling a site inspection where "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). If the Court grants the motion, "the court must, after giving an opportunity to be heard, require . . . the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(a).

14. The parties have a few remaining disputes that have prevented the parties from reaching an agreement regarding the inspection. Sparkle Pop has proposed several terms and conditions to which the Third-Party Plaintiff objects, including: (i) Sparkle Pop's sole right to designate the party permitted to conduct the inspection of the Warehouse and its requirement that any assistants be approved in advance; (ii) a requirement that the Trustee and Sparkle Pop enter into an agreement concerning payment of back rent owed at the Warehouse; and (iii) a requirement that the Ad Hoc Committee of Consignors solely bear Sparkle Pop's claimed cost of the inspection, which Sparkle Pop currently quotes at $639.94 per hour – which fee includes an unexplained "thirty percent markup" and exorbitant compensation for what should be a single employee who accompanies the inspector. Originally the fee requested was $1,000 per hour and inexplicably included charges for Sparkle Pop's tax and insurance payments for the Warehouse.

15. First, it is unreasonable for Sparkle Pop to be allowed to unilaterally designate the party permitted to conduct the inspection and that party's assistants, while proposing that the Third-Party Plaintiff and the rest of the *Ad Hoc* Committee bear the burden of paying for the inspection. Counsel for the Third-Party Plaintiff has offered that if there is a particular party Sparkle Pop does not want in the warehouse, that concern can likely be accommodated. But unilateral control over who conducts the inspection is beyond any reasonable scope.

16. Next, Sparkle Pop's alleged administrative rent claims, which the Third-Party Plaintiff asserts are claims solely against the Debtor's estate, are entirely unrelated to the proposed inspection and it is improper to make their resolution a condition of Sparkle Pop agreeing to the inspection.

17. Finally, Sparkle Pop's demand for payment of $639.94 per hour to permit inspection is unreasonable and inconsistent with Rule 34's allocation of discovery burdens. While Fed. R. Civ. P. 26(c)(1)(B) authorizes protective orders to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense," including by "specifying terms, including time and place or allocation of expenses, for the disclosure or discovery," Sparkle Pop has not demonstrated that permitting entry onto the warehouse premises will create any undue burden or expense for it, much less that such a burden or expense will be created that it necessitates an hourly rate of $639.94 is necessary or reasonable. Here, Sparkle Pop seeks to extract premium compensation for facility access without showing that the inspection itself imposes genuine burden beyond normal discovery obligations. Third-Party Plaintiff should not be required to subsidize Sparkle Pop's self-determined rate for inspection as a condition of exercising its lawful discovery rights under Rule 34.

18. While Fed. R. Civ. P. 45 addresses compensation to non-parties who have been subpoenaed to allow inspections, it can still be informative to the extent it supports Third-Party Plaintiff's assertion that Sparkle Pop has failed to establish any reliable or reasonable grounds for its request for $639.94 per hour to allow an inspection.

19. Fed. R. Civ. P. 45(d)(2)(B)(ii) requires that when a non-party commanded to produce documents or permit inspection makes an objection to a subpoena, "these acts may be

required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from **significant expense** resulting from compliance.” (emphasis added)

20. Once an order has been issued compelling a non-party to comply with a subpoena, "the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.* (*In re Subpoenas Served on the Am. Kidney Fund, Inc.*), Civil Action No. TDC-17-1787, 2019 U.S. Dist. LEXIS 72090, at *12 (D. Md. Apr. 29, 2019) (quoting *Legal Voice v. Stormans Inc.*, 738 F.3d 1178 (9th Cir. 2013)).

21. However, it is not enough that a party incurred significant expenses in the course of dealing with the subpoena in general; the expenses considered must have resulted from compliance with the subpoena. *UnitedHealthcare of Fla.* Civil Action No. TDC-17-1787, 2019 U.S. Dist. LEXIS 72090, at *12.

22. Significant expenses are only compensable to the extent they are reasonable. *See G&E Real Estate, Inc. v. Avison Young-Wa.*, D.C., LLC, 317 F.R.D. 313, 316 (D.D.C. 2016). Further, “[s]imply because a non-party undertook certain tasks and incurred associated expenses in the aftermath of an order compelling compliance with a subpoena does not mean that those costs resulted from that order.” *Id*.

23. While no order has been entered compelling compliance and Sparkle Pop is not a nonparty, they still have no evidence or supporting information showing that their demand for an hourly rate of $639.94 is a significant, reasonable expense that would be directly required to comply with the subpoena. To the contrary, having a single employee accompany the Third Party’s inspector is a minimal cost and not significant; thus, Sparkle Pop should bear the cost with regard to the requisite inspection.

Local Rules 9013-2 and 7026-1(f)

24. Pursuant to Local Rule 9013-2, no separate memorandum will be filed, and Third-Party Plaintiff will rely solely upon the information set forth in the motion.

25. The requisite certificate confirming compliance with Local Rule 7026-1(f) is attached hereto as **Exhibit 6.**

WHEREFORE, for the reasons stated herein, Third-Party Plaintiff requests (i) an order compelling the inspection of the Warehouse within thirty (30) days of the service of this motion; (ii) requiring the Third-Party Plaintiff and Sparkle Pop to agree on the individuals who may attend the inspection, with any proposed attendee excluded only upon a showing of good cause; (iii) holding that Sparkle Pop shall bear its own costs and expenses related to the inspection; (iv) granting such other and further relief as the Court may deem just and proper.

Dated: August 25, 2026

/s/ Catherine Keller Hopkin

Catherine Keller Hopkin (Bar No. 28257)
**YVS LAW, LLC**
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
Telephone: (443) 569-0788
E-Mail: chopkin@yvslaw.com

*Counsel for Third-Party Plaintiff American Mythology*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of August 2026, notice of filing Third Party Plaintiff's Motion to Compel Discovery was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, and a copy was served by electronic mail to:

Sparkle Pop, LLC

JASON KORAL
PRESS KORAL LLP
641 Lexington Avenue, 13th Floor
New York, NY 10022
(jkoral@presskoral.com)

*Counsel for Third-Party Defendant*
*Sparkle Pop LLC*

JODIE E. BEKMAN
GORDON FEINBLATT LLC
1001 Fleet Street, Suite 700
Baltimore, MD
(jbekman@gfrlaw.com)

*Counsel for Third-Party Defendant*
*Sparkle Pop LLC*

/s/ Catherine Keller Hopkin
Catherine Keller Hopkin